**The STATE of Ohio, Appellee,**

**v.**

**DALTON, Appellant.**

[Cite as *State v. Dalton,* 153 Ohio App.3d 286, 2003-Ohio-3813.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–1313 and 02AP–117.

Decided July 17, 2003.

288

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellee.

Wolman, Genshaft & Gellman, Benson A. Wolman and Susan B. Gellman; Jones, Day, Reavis & Pogue and Jeffrey S. Sutton; Ohio State University College of Law, David A. Goldberger and Lawrence Herman; and American Civil Liberties Union of Ohio Foundation, Inc., Raymond Vasvari and Jillian Davis, for appellant.

Klatt, Judge.

{¶ 1} Defendant-appellant, Brian J. Dalton, appeals from a judgment entry of the Franklin County Court of Common Pleas denying his motion to withdraw his guilty plea in case No. 01CR–02–1159 and from a corrected judgment entry imposing a prison term of 54 months after revocation of his judicial release in case No. 98CR–12–7193. Because appellant has demonstrated that there is a reasonable probability that he would not have entered a guilty plea in case No. 01CR–02–1159 but for the ineffective assistance of counsel, we reverse the trial court's judgment denying his motion to withdraw his guilty plea and remand for further proceedings. We also reverse the trial court's judgment in case No. 98CR–12–7193, imposing a 54–month prison sentence after appellant's probation revocation and remand for resentencing.

{¶ 2} By indictment filed December 23, 1998, appellant was charged in case No. 98CR–12–7193 (hereinafter referred to as "case No. 7193") with 10 counts of pandering obscenity involving a minor in violation of R.C. 2907.321 and 20 counts of pandering sexually oriented material involving a minor in violation of R.C. 2907.322. Appellant eventually pled guilty to 5 counts of pandering obscenity involving a minor and 5 counts of pandering sexually oriented material involving a minor. Appellant was sentenced to nine months in prison on each count. According to the trial court's sentencing entry, five of the nine-month sentences were to be served concurrently with each other, but consecutive to the other five sentences, which were also to be served concurrently with each other, for a total of 18 months in prison.

{¶ 3} After serving almost four months of his prison term, appellant was granted judicial release and placed on probation for three years. However, shortly thereafter, appellant was arrested for lack of participation in his sex-offender-treatment program, a violation of his probation. After his arrest, appellant's mother contacted Scott Merrick, appellant's probation officer. She informed Merrick that she had visited appellant's apartment and was concerned about some items she had discovered there. She asked Merrick to come to the apartment and remove those items.

{¶ 4} That same day, Merrick and another probation officer met appellant's mother at appellant's apartment. When they arrived, she had already placed several items on appellant's bed, including appellant's personal, handwritten journal. Merrick took all of the items back to the probation department where he began to read appellant's journal. The journal depicted appellant's personal fantasies of the violent torture and rape of a number of fictitious minor children. After reading appellant's journal, Merrick contacted a detective from the Columbus Police Sexual Abuse Squad who came to the probation department and took the journal.

{¶ 5} Subsequently, by indictment filed February 23, 2001, appellant was charged in case No. 01CR–02–1159 (hereinafter referred to as "case No. 1159") with two counts of pandering obscenity involving a minor in violation of R.C. 2907.321. Count One alleged that appellant created, reproduced, or published obscene material involving a minor as one of its participants or portrayed observers, in violation of R.C. 2907.321(A)(1). Count Two alleged that appellant bought, procured, possessed, or controlled obscene material involving a minor as one of its participants, in violation of R.C. 2907.321(A)(5). Both charges were based solely upon appellant's personal journal discovered in his apartment. The trial court appointed an attorney to represent appellant in case No. 1159. This same attorney previously represented appellant in case No. 7193.

{¶ 6} With his counsel's advise, on or about July 3, 2001, appellant entered a guilty plea in case No. 1159 to one count of pandering obscenity involving a minor in exchange for the dismissal of the other count of the indictment. The trial court accepted appellant's guilty plea and sentenced him to seven years in prison. In addition, due to appellant's probation violation, the trial court revoked appellant's probation in case No. 7193 and ordered appellant to serve the remainder of his original prison term consecutive to the seven-year prison term that he received in case No. 1159. By a corrected judgment entry filed August 2, 2001, the trial court ordered appellant to serve the remainder of what the court perceived to be a 54–month sentence in case No. 7193. However, the original sentencing entry in case No. 7193 indicates that appellant was to serve a total of 18 months.

{¶ 7} On August 2, 2001, appellant filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. The motion argued that appellant should be permitted to withdraw his guilty plea because R.C. 2907.321, 2907.322, and 2907.323 were unconstitutional as applied to him. Without an evidentiary hearing, the trial court denied appellant's motion, finding that, among other things, appellant failed to raise his constitutional arguments before he pled guilty and, therefore, he could not make those arguments in a post-sentence motion to withdraw his guilty plea.

{¶ 8} After the trial court's decision, new lawyers entered a notice of appearance on appellant's behalf. On September 14, 2001, appellant's new attorneys filed a motion asking the trial court to reconsider its decision denying appellant's motion to withdraw his guilty plea. This motion asserted that appellant's former trial counsel ineffectively represented appellant and that the trial court should not have accepted appellant's guilty plea because the acts underlying the charge to which he pled guilty were constitutionally protected by the First Amendment. After a two-day hearing, the trial court denied appellant's motion. The trial court found that appellant's former trial counsel was not ineffective in represent-

ing appellant, that she had informed appellant of all possible constitutional defenses to the charges, and that appellant had made his own decision to plead guilty.

{¶ 9} Appellant now appeals. In case No. 1159, appellant appeals from the trial court's denial of his motion to withdraw his guilty plea, assigning the following as error:

{¶ 10} "I. The court of common pleas abused its discretion in denying Brian Dalton's motion to vacate his plea, because it was not voluntary, knowing, and intelligent, and there is a reasonable probability that but for ineffective assistance of counsel he would not have pled guilty.

{¶ 11} "II. The court of common pleas abused its discretion in denying Brian Dalton's motion to vacate his guilty plea, because the conduct alleged is protected by the First Amendment to the United States Constitution and by Article I, Section 11 of the Ohio Constitution.

{¶ 12} "III. The court of common pleas abused its discretion in denying Brian Dalton's motion to vacate his guilty plea, because the allegations against him, even if proved, necessarily would have failed to show an essential element of the offense."

{¶ 13} Additionally, this court granted appellant leave to file a delayed appeal in case No. 7193. That leave was limited to a review of the disparity between the trial court's July 3, 2001 sentencing entry (reimposing the remainder of an 18–month prison sentence) and the subsequent corrected August 2, 2001 sentencing entry (which imposed the remainder of a 54–month prison sentence). Relative to this appeal, appellant assigns the following error:

{¶ 14} "IV. The court of common pleas committed plain error in resentencing Mr. Dalton to additional prison time on a probation violation; moreover, he was denied his right to due process under the Fourteenth Amendment when the court increased his sentence in his absence and without the presence of counsel, and his Sixth Amendment right to counsel when his counsel failed to raise the sentencing error."

{¶ 15} Addressing appellant's fourth assignment of error first, the state concedes that the corrected judgment entry of August 2, 2001, is erroneous. On August 19, 1999, appellant was sentenced in case No. 7193 to a prison term of 18 months. During the sentencing hearing, the trial court specifically referred to the 18–month prison term. Further, the judgment entry imposing sentence reflects a total prison term of 18 months. Four months into that sentence, the trial court granted appellant judicial release and placed him on probation. However, appellant violated the terms of his probation. Upon a probation violation, the trial court may reimpose the remainder of appellant's original

sentence, but it cannot increase that sentence. R.C. 2929.20(I); *State v. McConnell* (2001), 143 Ohio App.3d 219, 222–225, 757 N.E.2d 1167 (reversing trial court's sentencing after probation violation which imposed consecutive sentences when original sentences were concurrent); *State v. Darthard*, Franklin App. Nos. 01AP–1291, 01AP–1292 and 01AP–1293, 2002-Ohio-4292, 2002 WL 1933724, at ¶ 13. Here, the trial court increased appellant's original prison sentence from the 18 months originally imposed to 54 months when reimposing sentence after appellant's probation violation. This was error. Accordingly, appellant's fourth assignment of error is sustained.

{¶ 16} Appellant's remaining assignments of error all center on appellant's contention that the trial court abused its discretion in denying his motion to vacate the guilty plea in case No. 1159. Crim.R. 32.1 permits a motion to withdraw a guilty plea "only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Because appellant's motion to withdraw his guilty plea was filed after sentence was imposed, he must demonstrate manifest injustice. The burden of establishing the existence of manifest injustice is upon the individual seeking to vacate the plea. *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, paragraph one of the syllabus.

{¶ 17} A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court. Id. at paragraph two of the syllabus. Therefore, this court's review of a trial court's denial of a post-sentence motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863. "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Widder*, 146 Ohio App.3d 445, 2001-Ohio-1521, 766 N.E.2d 1018, at ¶ 6.

{¶ 18} Appellant contends in his first assignment of error that the trial court abused its discretion in denying his motion to vacate the guilty plea because he received ineffective assistance of counsel. Appellant alleges that, but for the ineffective assistance of counsel, he would not have entered a guilty plea. Ineffective assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea. *State v. Lake* (Mar. 28, 1996), Franklin App. No. 95APA07–847, 1996 WL 145498. In determining whether there has been ineffective assistance of counsel upon the entry of a guilty plea, the Ohio Supreme Court has held: " 'First, the defendant must show that counsel's performance was deficient.' * * * Second, 'the defendant must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.'" *Xie,* supra, 62 Ohio St.3d at 524, 584 N.E.2d 715, quoting *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203; *State v. Ransom* (Aug. 12, 1999), Franklin App. No. 98AP–1613, 1999 WL 604117; *Lake,* supra.

{¶ 19} Appellant contends that his trial counsel was deficient because she erroneously advised him to plead guilty based upon her misunderstanding of the charges against him. Throughout her testimony during the October 3, 2001 hearing on appellant's motion to withdraw his guilty plea, trial counsel indicated that she thought Count One of case No. 1159 was based on a letter that appellant wrote describing appellant's sexual molestation of his young cousin, a real person (hereinafter referred to as "the cousin letter"). She further believed that the cousin letter depicted, at least in part, actual events involving a minor. Trial counsel thought that Count Two was based on appellant's purely fictitious, personal journal. In fact, it is undisputed that both counts were based solely upon appellant's personal journal. Appellant argues that, due to his trial counsel's misunderstanding of the factual basis for the charges, she erroneously advised him to enter a guilty plea.

{¶ 20} In finding that appellant was competently represented, the trial court found trial counsel's testimony to be credible. The trial court further determined that trial counsel had simply "misspoken" when she referred to the cousin letter as the factual basis for Count One. This court is bound to accept the trial court's findings of fact and determinations of credibility if they are supported by competent, credible evidence. Cf. *State v. Clelland* (1992), 83 Ohio App.3d 474, 480, 615 N.E.2d 276 (reviewing trial court's decision denying motion to suppress). Although we see no reason to disturb the trial court's determination regarding trial counsel's credibility, the trial court's finding that trial counsel misspoke when she referred to the cousin letter is not supported by competent, credible evidence.

{¶ 21} Appellant's trial counsel indicated 13 separate times that it was her understanding that the first count was based on the cousin letter and the second count was based on appellant's personal journal. Appellant's trial counsel also testified that she understood that the cousin letter described the actual sexual molestation of a minor. She further testified that the fact that this letter described acts involving a real person was first and foremost in her mind when she was discussing with appellant the possible defenses to these charges. This misunderstanding was significant because of the important differences in the constitutional protections afforded the private possession of pornographic depictions of real children and similar depictions of fictional children—differences that trial counsel recognized and that affected her legal advice.

{¶ 22} The private possession of obscene material is constitutionally protected. *Stanley v. Georgia* (1969), 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542. However, the private possession of child pornography may be constitutionally prohibited. *Osborne v. Ohio* (1990), 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98. Although the state "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts," *Stanley,* 394 U.S. at 566, 89 S.Ct. 1243, 22 L.Ed.2d 542, the state has a legitimate interest in protecting children. Therefore, the court in *Osborne* upheld the prohibition of even the private possession of pornography depicting children because such a prohibition helps protect the victims of child pornography by destroying the market for such material. *Osborne,* 394 U.S. at 109, 110 S.Ct. 1691, 109 L.Ed.2d 98. See, also, *New York v. Ferber* (1982), 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 ("the States are entitled to greater leeway in the regulation of pornographic depictions of children").

{¶ 23} Both the *Osborne* and *Ferber* decisions upheld the prohibition of even the private possession of child pornography out of concern for the minor children involved and recognition of the state's interest in eradicating child sexual abuse. The Ohio Supreme Court has also held that prohibitions against the private possession of child pornography are constitutional. *State v. Meadows* (1986), 28 Ohio St.3d 43, 51, 28 OBR 417, 503 N.E.2d 697.

{¶ 24} However, the United States Supreme Court recently struck down portions of the Child Pornography Prevention Act of 1996 ("CPPA"), Section 2251, Title 18, U.S.Code et seq., which extended the federal prohibition against the possession of child pornography to sexually explicit images that were created without depicting any real children. *Ashcroft v. The Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 1396, 152 L.Ed.2d 403. The CPPA defined child pornography to include "any visual depiction" that is or appears to be of a minor engaging in sexually explicit conduct. This definition included in it "virtual child pornography," which need not include, let alone harm, real children. Id. at 1397. The court struck down this portion of the definition, finding that, in contrast to the material in *Ferber,* child pornography involving fictional children "records no crime and creates no victims by its production." Id. at 1402. The court similarly noted that *Ferber* "was based upon how [the child pornography] was made, not on what it communicated." Id.; see, also, id. at 1401 ("[w]here the images are themselves the product of child sexual abuse, *Ferber* recognized that the State had an interest in stamping it out without regard to any judgment about its content"). Therefore, the *Ashcroft* court held that the CPPA's prohibition of the possession of child pornography that does not depict real children was unconstitutional.

{¶ 25} Because there is constitutional significance to the distinction between pornographic depictions of real children and similar depictions of fictional children, understanding the factual basis for the charges against appellant was particularly important. It is uncontested that the children depicted in appellant's journal and the repugnant acts described therein were creations of appellant's imagination. Therefore, this case raises a substantial question concerning the constitutionality of a statute prohibiting the creation and private possession of purely fictitious written depictions of fictional children. One court in Ohio has held that R.C. 2907.321(A)(5) cannot constitutionally criminalize the private possession of an obscene but possibly fictitious letter involving children. *State v. Lesinski* (June 30, 1987), Lucas App. No. L–86–265, 1987 WL 13692. "Otherwise, the legislature would in effect be punishing an individual for his/her thoughts." Id.

{¶ 26} Because appellant's trial counsel did not understand that both counts were based solely upon the purely fictional personal journal, she could not have adequately advised appellant of the potential constitutional defense.

{¶ 27} Further, appellant's trial counsel's misunderstanding of the charges also affected her understanding of a possible statutory defense. R.C. 2907.321(A)(1) prohibits obscene material that has a minor as one of its participants or a portrayed observer. A minor is defined as "a person under the age of eighteen." R.C. 2907.01(M). The Eighth District Court of Appeals has recently held that a similar statute with similar language, R.C. 2907.322, prohibits only images depicting actual, real children. *State v. Anderson*, 151 Ohio App.3d 422, 2003-Ohio-429, 784 N.E.2d 196, ¶ 31. Again, because appellant's trial counsel did not realize that both counts were based solely on the personal journal which described purely fictitious events involving fictitious children, she could not have properly considered this possible statutory defense.

{¶ 28} Appellant's trial counsel also believed that a motion to dismiss based on these defenses would require testimony from appellant that the cousin letter and the personal journal were purely fictional. Because she believed that the cousin letter identified a real person and may have described real events, she did not want to place appellant in a position where he would perjure himself. Again, this concern was based on trial counsel's mistaken belief that the cousin letter was the basis for one of the charges against appellant.

{¶ 29} For counsel to render effective assistance to a criminal defendant, she should, at the least, understand the basis of the criminal charges and possible defenses of those charges. See *Scarpa v. Dubois* (C.A.1, 1994), 38 F.3d 1, 10; cf. *Rinehart v. Brewer* (C.A.8, 1977), 561 F.2d 126, 131–132 (finding ineffective assistance of counsel where, among other things, counsel was confused about criminal charges). "[I]f an attorney does not grasp the basics of the charges and

the potential defenses to them, an accused may well be stripped of the very means that are essential to subject the prosecution's case to adversarial testing." *Scarpa,* supra. Given trial counsel's misunderstanding of the basis of the charges and the potential defenses to the charges, and the impact of this misunderstanding on her advice to appellant, we find that trial counsel's assistance to appellant was deficient.

{¶ 30} Having found trial counsel's assistance to be deficient, we now must determine whether appellant was prejudiced by his counsel's deficient assistance. To satisfy this second prong of the *Xie* test, appellant must show that there is a reasonable probability that but for trial counsel's errors, he would not have pled guilty. *Xie,* supra, 62 Ohio St.3d at 524, 584 N.E.2d 715; *State v. Mushrush* (1999), 135 Ohio App.3d 99, 105, 733 N.E.2d 252; *Ransom,* supra; *State v. Fox* (Dec. 17, 1998), Cuyahoga App. No. 74641, 1998 WL 895265. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373.

{¶ 31} Appellant stated in an affidavit attached to his September 14, 2001 motion to withdraw his guilty plea that trial counsel advised him that he had no defenses against the charges facing him in case No. 1159 and that he should plead guilty. He specifically stated that trial counsel told him that he had no substantial constitutional defenses and that he would be found guilty of both charges if he went to trial. Based upon this advice, appellant chose to enter his guilty plea. Appellant further stated that, but for trial counsel's advice, he would not have entered his guilty plea. Trial counsel admitted that appellant wanted to have this case resolved as quietly as possible but, if a constitutional argument could have resolved the case, appellant would have wanted to pursue that defense. These statements demonstrate a reasonable probability that appellant would not have pled guilty if his trial counsel had understood the charges and adequately advised him of the potential constitutional and statutory defenses to those charges.

{¶ 32} Although the United States Supreme Court recognized that the prejudice inquiry may include an assessment of the strength of the potential defense, the focus is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* supra, 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203; see, also, *Brazeail v. Florida* (Fla.App. 1 Dist. 2002), 821 So.2d 364, 368. Obviously, the greater the likelihood that an affirmative defense would be successful at trial, the more likely it is that the defendant would not have pled guilty if he would have received effective assistance of counsel. However, the relevant inquiry is not whether appellant ultimately would have prevailed at trial but whether he would have pled guilty if properly advised by counsel. *Xie,* supra, 62 Ohio St.3d at 524, 584 N.E.2d 715; *Fox,* supra; *State v.*

*Hastings* (Dec. 15, 1998), Franklin App. No. 98AP–421, 1998 WL 895936; *Lake,* supra.

{¶ 33} This approach mirrors the United States Supreme Court's prejudice inquiry when counsel's alleged deficiency is a failure to file a notice of appeal. *Roe v. Flores–Ortega* (2000), 528 U.S. 470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985. In such a case, the prejudice prong of the ineffective-assistance-of-counsel inquiry is satisfied by a showing that, but for counsel's deficient performance, the defendant would have appealed. Id. at 486, 120 S.Ct. 1029, 145 L.Ed.2d 985. The *Roe* court declined to address the potential merits of such an appeal, other than to note that "showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed." Id. Similarly, in the case at bar, we look to determine whether there is a reasonable probability that the outcome of the plea process (i.e., the guilty plea) would have been different but for trial counsel's ineffective assistance. Here, we answer this question in the affirmative.

{¶ 34} In conclusion, given trial counsel's misunderstanding of the nature of the charges appellant faced and the potential defenses available to those charges, we find that she rendered ineffective legal assistance. Appellant also has shown a reasonable probability that he would not have pled guilty but for trial counsel's ineffective assistance. *Xie,* supra. Trial counsel's ineffective assistance of counsel constitutes manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea. *Lake,* supra; Crim.R. 32.1. We find, therefore, that the trial court abused its discretion in denying appellant's motion to vacate his guilty plea in case No. 1159. Appellant's first assignment of error is sustained. The disposition of this assignment of error renders appellant's second and third assignments of error moot. App.R. 12.

{¶ 35} Having sustained appellant's first assignment of error, rendering appellant's second and third assignments of error moot, we reverse the judgment of the Franklin County Court of Common Pleas in case No. 1159, denying appellant's motion to vacate his guilty plea, and remand this matter to the trial court for further proceedings consistent with this opinion. Additionally, having sustained appellant's fourth assignment of error, the August 2, 2001 judgment of the Franklin County Court of Common Pleas is vacated, and case No. 7193 is remanded to the trial court for sentencing consistent with this opinion and the trial court's sentencing entries of August 20, 1999 and July 3, 2001.

> Judgment in case No. 1159
> reversed and remanded.

> Judgment in case No. 7193
> vacated and remanded.

PETREE, P.J., and WRIGHT, J., concur.

298

J. CRAIG WRIGHT, J., retired, of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.