[Cite as *State v. Graham*, 2017-Ohio-4093.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27033 |
| | : | |
| v. | : | T.C. NO. 11-CR-274; 13-CR-2145/2 |
| | : | |
| JAMES L. GRAHAM, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___2nd___ day of _____June_____, 2017.

. . . . . . . . . . .

ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 2600 Far Hills Avenue, Suite 315, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

JAMES L. GRAHAM, JR., Inmate No. A705-292, Chillicothe Correctional Institute, P. O. Box 5500, Chillicothe, Ohio 45601
        Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant James L. Graham, Jr., appeals a decision of the Montgomery County Court of Common Pleas, Criminal Division, overruling his post-sentence motion to withdraw his no contest pleas. Graham filed a timely notice of appeal

with this Court on March 1, 2016.

{¶ 2} We set forth the history of the case in *State v. Graham,* 2d Dist. Montgomery No. 26205, 26206, 2015-Ohio-896 (hereinafter "*Graham I*"), and repeat it herein in pertinent part:

*** On July 15, 2013, Dayton police officers Travis Eaton and his partner were dispatched to Grandview Hospital to meet a woman who had been robbed and sexually assaulted. The woman told the officers that she and another woman were walking down Main Street near East Norman Avenue when they encountered two African–American men—one heavier set; the other tall, thin, and shirtless. They called over to the women, and the women approached. When the women neared, the victim saw that the shirtless man was holding what appeared to be a shotgun wrapped in blue clothing. The man then pointed the gun at her head and said, " 'You all are going to follow us into the back alley.' " (Tr. 10). They walked down the alley behind East Norman and stopped behind the fourth or fifth house. The shirtless man told the women to undress and empty out their purses, which they did. Out of the house to the right of where they stood came a heavier-set man wearing gray boxer briefs. The shirtless man leveled his gun at the victim and said, " 'You're going to go in there and you're going to do whatever the F Dave tells you.' " (Tr. 11). After they went inside the house, "Dave" sexually assaulted the victim. Afterwards, she ran out of the house to the hospital.

The victim also told Officer Eaton "that later on through her encounter

that she discovered that the male that was holding the gun was named J.R. or Junior or something." (Tr. 9–10). This man was later identified as Graham.

Armed with this information, Officer Eaton and his partner drove to East Norman Avenue and turned down the back alley. After passing four or five houses, they saw items on the ground that looked like they came from a woman's purse—combs, hair bands, and the like. Officer Eaton called a backup unit, and when it arrived, the officers surrounded the house to the right of the items that they found on the ground. Eaton peered through an open window into the living room and saw sleeping a heavy-set man wearing gray boxer briefs. When another officer began knocking on the front door, Officer Eaton, through the window, ordered the man to answer the door, which he did. This exchange followed:

"We asked him his name."—"Dave." (Tr. 18).

"We asked him if anyone else was in the house."—"[Y]eah, * * * family and everybody [i]s here." (*Id.*)

"We asked him who everybody was."—" 'Junior and them.' " (*Id.*)

The officers then entered the house and found "Junior" (Graham), who matched the victim's description of the shirtless man holding the gun. They arrested Graham and placed him in the back of a police cruiser. They then obtained consent from the owner of the house to search it. Officer Eaton found a pellet gun that looked like a rifle wrapped in a blue t-shirt.

The police took Graham to the police station where he was twice interviewed by Detective Ross Nagy. During the second interview, Graham made incriminating statements. The content of these statements is not in the record.

Graham was indicted of two counts of aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1); two counts of kidnapping (sexual activity), in violation of R.C. 2905.01(A)(4); one count of complicity to commit rape (by force or threat of force), in violation of R.C. 2923.03(A)(2); and one count of rape (by force or threat of force), in violation of R.C. 2907.02(A)(2). Each of these offenses is a first-degree felony.

Graham moved to suppress all of the evidence seized in the house and the statements that he made later at the police station. After a hearing, the trial court sustained Graham's motion as to the evidence seized in the house, concluding that, by entering the house without a warrant, the officers violated the Fourth Amendment. But the court overruled the motion as to Graham's statements, concluding, based on *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), that the exclusionary rule does not apply because probable cause existed to arrest Graham.

Graham pleaded no contest to the indicted charges, and the trial court found him guilty as charged. The court sentenced Graham to 10 years in prison for each aggravated robbery offense, to 11 years for complicity to commit rape, and to 11 years for rape. (The kidnapping offenses merged into the two aggravated robbery offenses.) The court

ordered Graham to serve the sentences concurrently. At the time he committed these offenses, Graham was on community control in another case. The court found that he had been carrying a concealed weapon (loaded, ready at hand), in violation of R.C. 2923.12(A)(1), so the court revoked the community-control sanction and sentenced Graham to 17 months in prison, to be served concurrently to the 11–year sentence.

*Id.* at ¶s 2-9.

{¶ 3} Graham appealed, and we affirmed his conviction and sentence. *Graham I.* Specifically, in *Graham I*, we found that the trial court was correct not to suppress Graham's statements to police obtained after an alleged illegal home search. There was probable cause to arrest Graham, so the exclusionary rule did not bar the statements. *Id.* Additionally we found that the trial court did not err by imposing the maximum sentence for the offenses of complicity to commit rape and rape. *Id.* The sentences were within the statutory range, and the trial court expressly stated that it had considered the purposes and principles of sentencing. *Id.*

{¶ 4} On April 13, 2015, Graham filed a "Motion for Re-Sentencing Based on Void Judgment" with the trial court. The trial court overruled Graham's motion in a decision issued on April 21, 2015. The record establishes that Graham refiled the same motion with the trial court on May 19, 2015, which the trial court again overruled in an order issued on May 20, 2015. Graham did not appeal either one of the trial court's decisions.

{¶ 5} Thereafter, on December 9, 2015, Graham filed a "Motion to Withdraw Previously Entered Plea of No Contest." The trial court overruled Graham's motion to withdraw his no contest plea in a decision issued on January 29, 2016.

{¶ 6} We note that on September 16, 2016, Graham's appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which he alleged that no arguably meritorious issues exist on appeal. Appointed counsel did advance one potential assignment of error regarding the trial court's failure to hold a hearing on Graham's post-sentence motion to withdraw his no contest plea.    In an order issued on September 20, 2016, we granted Graham sixty days from the date of the order in which to file a pro se appellate brief.   Thereafter, on December 19, 2016, Graham filed a pro se appellate brief in which he advances one assignment of error, arguing that the trial court erred when it imposed the maximum prison sentence for his offenses.   In the same assignment, Graham also asserts that the trial court erred when it overruled his motion to withdraw his no contest pleas because he received ineffective assistance of counsel.   The State filed a responsive brief on February 14, 2017, and the instant appeal is now properly before us.

{¶ 7} Because they are interrelated, we will discuss Graham's sole assignment of error together with appointed appellate counsel's sole potential assignment of error.

{¶ 8} Graham's sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN SENTENCING APPELLANT TO A MAXIMUM TERM OF IMPRISONMENT IN VIOLATION OF STATUTORY REQUIREMENT OF THE OHIO REVISED CODE SENTENCING PENALTIES."

{¶ 10} Appointed counsel's potential assignment of error is as follows:

{¶ 11} "THE COURT IMPROPERLY DENIED A HEARING IN HIS MOTION TO WITHDRAW HIS PLEA."

{¶ 12} In his sole assignment, Graham contends that the trial court erred when it imposed the maximum prison sentence for his offenses. However, as previously noted, Graham raised the same argument in his direct appeal, wherein he contended that "the maximum sentences imposed for complicity to commit rape and rape are contrary to law because the State failed to follow the procedures in R.C. 2929.11 and 2929.12." *Graham I.*

{¶ 13} "Pursuant to the doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Collins*, 2d Dist. Montgomery No. 25612, 2013-Ohio-3645, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Res judicata applies to any issue that was raised or could have been raised in a criminal defendant's prior appeal from his conviction. *Id.*, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). "[T]he doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless re-litigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18.

{¶ 14} Since we have already determined that Graham's sentence is not contrary to law in his direct appeal of his conviction and sentence, the issue is res judicata and may not be litigated here in a post-sentence motion to withdraw. *State v. Ross,* 2d Dist. Miami No. 2013 CA 1, 2013–Ohio–2766, ¶ 10.

{¶ 15} As previously noted, however, Graham also argues that the trial court erred

when it overruled his post-sentence motion to withdraw his no contest pleas because he received ineffective assistance of counsel. Therefore, he asserts that his pleas were not entered in a knowing, voluntary, or intelligent fashion.

{¶ 16} "We review the alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted.) *State v. Mitchell,* 2d Dist. Montgomery No. 21957, 2008–Ohio–493, ¶ 31.

{¶ 17} We review a trial court's decision on a post-sentence motion to withdraw a no contest or guilty plea and on a decision granting or denying a hearing on the motion for an abuse of discretion. *Xenia v. Jones,* 2d Dist. Greene No. 07–CA–104, 2008–Ohio–4733, ¶ 6; *State v. Perkins,* 2d Dist. Montgomery No. 25808, 2014–Ohio–1863, ¶ 27. "An abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' " *State v. Perkins,* 2d Dist. Montgomery No. 24397, 2011–Ohio–5070,

¶ 16, quoting *State v. Beechler,* 2d Dist. Clark No. 09–CA–54, 2010–Ohio–1900, ¶ 62. (Other citation omitted.) "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

**{¶ 18}** Crim.R. 32.1 provides that a trial court may grant a defendant's post-sentence plea withdrawal motion only to correct a manifest injustice. Accordingly, a defendant who moves to withdraw his plea bears the burden of establishing a manifest injustice. Crim.R. 32.1; *State v. Harris,* 2d Dist. Montgomery No. 19013, 2002 WL 940186, * 1 (May 10, 2002), citing *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. " 'A "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.' " *State v. Brooks,* 2d Dist. Montgomery No. 23385, 2010–Ohio–1682, ¶ 8, quoting *State v. Hartzell,* 2d Dist. Montgomery No. 17499, 1999 WL 957746, *2 (Aug. 20, 1999). Under this standard, "a post-sentence withdrawal motion is allowable only in extraordinary cases." (Citation omitted.) *Smith* at 264.

**{¶ 19}** It is well established that " '[i]neffective assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of [a] plea.' " *State v. Banks,* 2d Dist. Montgomery No. 25188, 2013–Ohio–2116, ¶ 9, quoting *State v. Dalton,* 153 Ohio App.3d 286, 2003–Ohio–3813, 793 N.E.2d 509, ¶ 18 (10th Dist.). To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, the defendant must show that: (1) defense counsel's performance

was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution; and (2) that defense counsel's errors prejudiced the defendant. *Id.* at 687. With regards to a plea withdrawal motion, to demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's errors, the defendant would not have entered a plea." *State v. Wilson,* 2d Dist. Montgomery No. 26354, 2015–Ohio–1584, ¶ 17, citing *Strickland.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Strickland* at 687.

{¶ 20} A hearing on a post-sentence plea withdrawal motion is not necessary if the facts alleged by the defendant, even if accepted as true, would not require the court to grant the motion to withdraw the plea. *State v. Burkhart,* 2d Dist. Champaign No. 07–CA–26, 2008–Ohio–4387, ¶ 12; *State v. Mogle,* 2d Dist. Darke Nos. 2013–CA–4, 2013–CA–5, 2013–Ohio–5342, ¶ 17. In other words, "[t]o obtain a hearing, 'a movant must establish a reasonable likelihood that the withdrawal is necessary to correct a manifest injustice [.]' " *State v. Tunstall,* 2d Dist. Montgomery No. 23730, 2010–Ohio–4926, ¶ 9, quoting *State v. Whitmore,* 2d Dist. Clark No. 06–CA–50, 2008–Ohio–2226, ¶ 11. "[W]e have held that no hearing is required on a post-sentence motion to withdraw a plea where the motion is supported only by the movant's own self-serving affidavit, at least when the claim is not supported by the record." (Citations omitted.) *State v. Stewart,* 2d Dist. Greene No. 2003–CA–28, 2004–Ohio–3574, ¶ 6.

{¶ 21} In the instant case, Graham argues that he should be able to withdraw his no contest pleas because his trial counsel was ineffective for failing to investigate a previously offered plea deal. Graham alleges that the State offered him the same plea

deal as one of his co-defendants who was sentenced to four years in prison. Graham further alleges that his trial counsel advised him not to accept the plea because the main witnesses were known prostitutes, and he would therefore win at trial. Other than his bare assertion, however, Graham has produced no evidence that such an offer was ever made by the State, not even a self-serving affidavit, to substantiate his claim that counsel failed in that regard.

{¶ 22} Moreover, Graham's allegations regarding his trial counsel's advice to reject the plea deal in favor of going to trial rely on matters outside the record. This court has held that matters outside the record that allegedly corrupted the defendant's choice to enter a guilty or no contest plea so as to render that plea less than knowing and voluntary, such as ineffective assistance provided by a defendant's trial counsel, are proper grounds for post-conviction relief pursuant to R.C. 2953.21 and that the availability of that relief removes defendant's claims from the type of extraordinary circumstances that demonstrate a manifest injustice, which is required for Crim.R. 32.1 relief. *Hartzell,* 2d Dist. Montgomery No. 17499, 1999 WL 957746 at *2; *State v. Moore,* 2d Dist. Montgomery No. 24378, 2011–Ohio–4546, ¶ 13–15.

{¶ 23} Furthermore, we note that Graham's motion to withdraw his no contest pleas was filed approximately ten months after we affirmed his direct appeal and almost two years after he was sentenced. "Although Crim. R. 32.1 does not contain a time limit for filing a post-sentence motion to withdraw a plea, a trial court may take into consideration the passage of time between the entry of the plea and a defendant's attempt to withdraw it." (Citations omitted.) *Jones,* 2d Dist. Greene No. 07–CA–104, 2008–Ohio– 4733 at ¶ 9. "[A]n undue delay between the occurrence of the alleged cause of a

withdrawal of [the] plea and the filing of a Crim.R. 32 motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *State v. Harden,* 2d Dist. Montgomery No. 22839, 2009–Ohio–3431, ¶ 7, citing *Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324. Here, Graham has failed to provide any explanation for the delay in filing his motion, which further supports the trial court's decision to overrule it.

{¶ 24} Graham's sole assignment of error is without arguable merit. Additionally, appointed counsel's potential assignment is without arguable merit because a hearing on Graham's post-sentence motion to withdraw was clearly not warranted under the facts of the instant case.

{¶ 25} Furthermore, the record of the plea hearing establishes that Graham was fully advised of all constitutional and non-constitutional rights he was waiving. The trial court engaged Graham in a complete Crim.R. 11 colloquy. In particular, the trial court advised Graham that, by pleading no contest, he was waiving: (1) his right to a jury trial; (2) his right to confront his accusers; (3) his right to compulsory process to obtain witnesses; (4) his right to require the state to prove his guilt beyond a reasonable doubt; and (5) his privilege against compulsory self-incrimination. The trial court further explained the nature of the charges and the maximum penalty Graham could face if the court accepted his pleas of no contest. Graham stated he understood the rights he was waiving and specifically stated he desired to plead no contest to the charged offenses. We also note that Graham stated that he was satisfied with the performance of his trial counsel. The record demonstrates Graham understood the rights he was waiving and knowingly, intelligently, and voluntarily entered the guilty plea.

{¶ 26} In light of the foregoing, we find the trial court did not abuse its discretion in

overruling Graham's post-sentence motion to withdraw his no contest pleas without a hearing, as we agree that he has failed to establish a reasonable likelihood that the withdrawal of his plea was necessary to correct a manifest injustice. Having conducted an independent review of the record pursuant to *Anders*, we find this appeal to be wholly frivolous. There are no meritorious issues for appeal. Therefore, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Alice B. Peters
Adam James Stout
James L. Graham, Jr.
Hon. Michael W. Krumholtz