**[Cite as *State v. Ray*, 2020-Ohio-4769.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

|  |  |
|---|---|
| STATE OF OHIO | : |
|  | : |
|     Plaintiff-Appellee | :   Appellate Case No. 2019-CA-31 |
|  | : |
| v. | :   Trial Court Case No. 2017-CR-136 |
|  | : |
| WALTER EUGENE RAY | :   (Criminal Appeal from |
|  | :   Common Pleas Court) |
|     Defendant-Appellant | : |
|  | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of October, 2020.

. . . . . . . . . . .

SAMUEL ADAM USMANI, Atty. Reg. No. 0097223, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road NE, Bloomingburg, Ohio 43106
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Walter Eugene Ray appeals from the trial court's judgment denying, without a hearing, his post-sentence motion to withdraw his guilty plea. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the record, on June 18, 2017, Ray and his girlfriend, Carly Bradley, went from Springfield to the home of Carly's sister, Ashley, and Ashley's boyfriend, Jimmy Huffman, in Urbana. Ray asserts that he and Carly went to retrieve Carly's make-up kit and that, while they drove, Ashley asked Carly if Ray had any marijuana to sell. The State asserts that the purpose of the visit was to sell marijuana. Regardless, Ray indicated that he had "an eighth" of marijuana and intended to sell it. Ray had a firearm with him that, due to a pending domestic violence charge, he allegedly could not lawfully possess.

{¶ 3} After Ray entered Ashley and Huffman's residence, Ray and Huffman had an altercation. The State acknowledged at Ray's sentencing hearing that "the victim's [Huffman's] real motive was to confront [Ray] and [Carly] about his suspicion that [Ray] had stolen property from their residence." Ray and Huffman provided conflicting versions as to whom had started the fight. Ray sustained injuries to his back, forearm, hand, head, and face; Ray and Huffman disagree about how those injuries occurred. Ray was able to grab his gun, and he shot Huffman three times; one of the bullets shattered Huffman's femur and the other two caused "relatively superficial" wounds.

{¶ 4} On June 29, 2017, Ray was indicted on a nine counts: two counts of felonious assault; one count of having a weapon while under disability; one count of improperly

handling firearms in a motor vehicle; two counts of carrying a concealed weapon; two counts of trafficking in marijuana; and one count of possession of marijuana. Several of the offenses included firearm specifications and a forfeiture specification (the handgun). Ray retained an attorney and was represented by that attorney throughout the pendency of his case.

{¶ 5} Approximately three months later, in September 2017, Ray pled guilty to one count of felonious assault, a second-degree felony, and one count of trafficking in marijuana, a fourth-degree felony. Ray also pled guilty to the forfeiture specification attached to the felonious assault charge. In return for Ray's guilty pleas, the State agreed to dismiss all of the remaining counts and specifications, to remain silent as to whether the sentences should be concurrent or consecutive, and to recommend and review a presentence investigation report. The trial court accepted the guilty pleas and referred the matter for a presentence investigation.

{¶ 6} At sentencing, the trial court imposed seven years in prison for the felonious assault and 18 months for trafficking in marijuana, to be served concurrently. The trial court also ordered the forfeiture of the handgun recovered from Ray and imposed fines totaling $1,250. We affirmed Ray's conviction on direct appeal. *State v. Ray*, 2d Dist. Champaign No. 17-CA-33, 2018-Ohio-3293.

{¶ 7} On October 8, 2019, nearly two years after his sentencing, Ray filed a motion to withdraw his plea, claiming that his plea was not knowing, intelligent, and voluntary due to ineffective assistance of counsel. He asserted that his trial counsel induced him to plead guilty, despite being told that he had been attacked with a knife by the victim and acted in self-defense. Ray said that he also informed his attorney that Carly's family

members had extorted money from him and that Carly had threatened to tell the police that he hit her, had a gun, and sold drugs. Ray further claimed that his attorney told him that he would receive a sentence of four years, and that his attorney did not help him write a letter in support of a non-prison sentence, which Ray claims the trial court had told him that he could file. Ray supported his motion with his own affidavit and an affidavit from his father. Ray requested a hearing on his motion.

{¶ 8} The trial court denied Ray's motion without a hearing. The trial court emphasized that Ray's answers at the plea hearing contradicted his assertions that he was pressured by defense counsel to plead guilty, that he was promised a four-year sentence, that he was told to write a letter in support of a non-prison sentence, and that he had a defense to the charges. The court noted that it had used a four-year sentence as an example in explaining post-release control and surmised that Ray based his claim that he was promised a four-year sentence on that example. The court concluded that Ray's purported expectation was "wholly unsupported by the record, given the Court's plea colloquy with [Ray]." The court further stated that "the record shows that Defendant decided to plead guilty, after weighing the pros and cons of a possible self-defense claim with his attorney." The court found nothing in the record that showed Ray was told he should write a letter. The court found no basis for a hearing on Ray's motion.

{¶ 9} Ray appeals from the trial court's judgment.

## II. Post-Sentence Motion to Withdraw Plea

{¶ 10} In his sole assignment of error, Ray claims that his plea should have been vacated as not knowing, intelligent, and voluntary due to ineffective assistance of counsel. Ray's appellate brief is virtually identical to his motion to withdraw his plea and raises the

same arguments.

{¶ 11} Under Crim.R. 32.1, a trial court may permit a defendant to withdraw a plea after imposition of sentence only to correct a manifest injustice. Crim.R. 32.1; *State v. Wilson*, 2d Dist. Montgomery No. 26354, 2015-Ohio-1584, ¶ 16. "A 'manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8, citing *State v. Hartzell*, 2d Dist. Montgomery No. 17499, 1999 WL 957746 (Aug. 20, 1999).

{¶ 12} Ineffective assistance of counsel can provide a basis for seeking a post-sentence withdrawal of a guilty plea. *Wilson* at ¶ 17. "When the alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show that (1) trial counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have entered a plea." *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 13} Withdrawal of a plea after sentencing is permitted only in the most extraordinary cases. *State v. Jefferson*, 2d Dist. Montgomery No. 26022, 2014-Ohio-2555, ¶ 17, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). "The defendant bears the burden of establishing the existence of a manifest injustice, and whether that burden has been met is an issue within the sound discretion of the trial court." *Wilson* at ¶ 18.

{¶ 14} "[A]n evidentiary hearing is not required on every post-sentence motion to withdraw a plea. The movant must establish a reasonable likelihood that withdrawal of

his plea is necessary to correct a manifest injustice before a trial court must hold a hearing on his motion." (Citation omitted.) *State v. Stewart*, 2d Dist. Greene No. 2003-CA-28, 2004-Ohio-3574, ¶ 6. "[N]o hearing is required on a post-sentence motion to withdraw a plea where the motion is supported only by the movant's own self-serving affidavit, at least when the claim is not supported by the record." *Id.*

{¶ 15} At the outset, we note that Ray filed his motion to withdraw his plea two years after he was sentenced. "Although Crim. R. 32.1 does not contain a time limit for filing a post-sentence motion to withdraw a plea, a trial court may take into consideration the passage of time between the entry of the plea and a defendant's attempt to withdraw it." (Citations omitted.) *State v. Jones*, 2d Dist. Greene No. 07-CA-104, 2008-Ohio-4733, ¶ 9. "[A]n undue delay between the occurrence of the alleged cause of a withdrawal of [the] plea and the filing of a Crim.R. 32 motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *State v. Harden*, 2d Dist. Montgomery No. 22839, 2009-Ohio-3431, ¶ 7, citing *Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324. Here, Ray has failed to provide any explanation for the delay in filing his motion, which supports the trial court's decision to overrule it. *See State v. Nawman*, 2d Dist. Clark No. 2016-CA-43, 2017-Ohio-7344, ¶ 16 (defendant failed to explain more than two-year delay between sentencing and filing of motion to withdraw plea).

{¶ 16} We have reviewed the transcript of the plea hearing, as well as the affidavits of Ray and his father. Ray's plea hearing fully complied with Crim.R. 11.

{¶ 17} At the beginning of the plea hearing, the prosecutor articulated the terms of the plea agreement: Ray would plead guilty to felonious assault (Count 1), the forfeiture specification to Count 1, and trafficking in marijuana (Count 8), and in exchange the State

would dismiss the remaining charges and specifications, agree to remain silent on the issue of consecutive or concurrent sentencing, and recommend a presentence investigation report, which it would review. Defense counsel agreed that the prosecutor provided an accurate summary of the agreement. The plea agreement did not include a recommended sentence.

{¶ 18} Ray and his father stated in their affidavits that Ray's trial counsel said that Ray would get four years if he entered a plea. However, discussing Ray's possible sentence at the sentencing hearing, the trial court made clear that it was not involved in the parties' plea negotiations and it had not agreed to provide Ray with a particular sentence. The court stated:

THE COURT: All right. Your lawyer and the Prosecutor have talked to each other about this case. I haven't been involved in those discussions. I haven't told anyone what I will do regarding sentence. The only thing that the lawyers know is that I'll seek to follow the law. Do you understand that?

[RAY]: Yes, sir.

THE COURT: In some counties, and I don't know if Clark County is one of these counties, some Judges actively participate in sentencing. And the reason that I don't do that is because, in my opinion, the lawyers know more about the case than I do. So for me to agree to something upfront, I don't think it is fair to either the State of Ohio or you as a Defendant. I want to reserve the right to make a decision after I learn about the case and not beforehand.

So in this county, in this Court, I take the position that I stay out of

plea negotiations. The Court will listen to the recommendations of both lawyers. And sometimes the Court will follow those recommendations. Sometimes the Court won't. Do you understand that?

[RAY]: Yes, sir.

THE COURT: At the time of sentencing the Court has to decide what to do with your case. * * *

Later during the plea hearing, when asked if anyone had made promises ("except what you heard in court today") to induce his plea, Ray responded, "No, sir."

{¶ 19} In short, Ray's assertion that defense counsel told him that he would receive a four-year sentence is contradicted by his sworn statements at the plea hearing. In addition, the trial court expressly informed Ray that it was not bound by the recommendations of the parties and would decide his sentence at sentencing.

{¶ 20} The trial court and defense counsel also addressed the issue of self-defense at the plea hearing. Toward the end of the hearing, the trial court asked Ray, "Do you have any defense to the charges, meaning, any reason you should be found no guilty?" Defense counsel asked to interject and told the court: "This case did involve a potential defense of self-defense. Mr. Ray and I have discussed the strengths and weaknesses of the case and the risks and benefits of going to trial. And so while there are facts in his favor, after talking with me and after talking with his father, I believe he's made an intelligent decision to enter a plea of guilty." Ray confirmed that he heard and understood what his attorney had said.

{¶ 21} The trial court continued:

This question that I ask, it is not unusual that it sometimes trips

people up. Because there are some cases where an individual will sit there and say, yeah, I think there is a reason that I'm not guilty. And I understand that. But it goes back to what I said earlier about do you understand that when you enter a plea of guilt, it is a complete admission of guilt. * * * And what I'm trying to do in this instance is make sure that as you are entering your plea of guilt knowingly, intelligently, and voluntarily, that you've taken into consideration all of the facts of your case.

There are instances where people will say that there are reasons why certain things happened. It may not rise to the level of an affirmative defense, but there are factors. And they are called mitigating factors. Or factors in mitigation that people will use to explain to a Judge to say, Judge, I know that these are the charges. And I know the Prosecutor said these are very serious offenses. But this information I want you to use it because I want you to understand that there is a reason why things should be looked at in a different way, and those reasons are favorable to my case. And that is different than saying, Judge, I have a legal reason why I'm not guilty. Do you understand the distinction?

[RAY]: Yes, sir.

THE COURT: Now, your lawyer has indicated that you and he have discussed this matter. And the concept of self-defense is a very complex one. And there are certain risks to obviously going to trial. But I want to make sure that if you are entering a plea of guilt, that at sentencing you are not going to come back and say, well, I'm not really guilty of this because I

did it in self-defense. Because that would be asserting a defense to the crime versus saying, Judge, I think there are some factors that I want you to consider that make my conduct less serious than more serious.

At this juncture, Ray and his trial counsel conferred. When asked again if he had a defense to the charge, Ray responded, "No, sir."

{¶ 22} The record thus reflects that Ray's attorney was aware of the facts underlying the charges, and that he and Ray had discussed the viability of asserting the affirmative defense of self-defense, as well as the pros and cons of going to trial versus entering a guilty plea. Ray's father stated in his affidavit that he believed that Ray had a defense of self-defense and thought Ray should have gone to trial; Ray's father also stated that Ray repeatedly indicated that he wanted to go to trial. However, the record reflects that, at the plea hearing, Ray elected to forego a possible self-defense argument and enter a guilty plea.

{¶ 23} Ray further claims that the trial court told him that he could write a letter to explain why he should not receive a prison term, and that trial counsel failed to assist him with that letter. We find nothing in the record to support Ray's belief that he was told to write a letter on his own behalf. Rather, the trial court informed Ray at the plea hearing that there was a presumption in favor of prison for the felonious assault charge and that Ray and his attorney would "have the opportunity to tell the Court why you should not be sentenced to prison."

{¶ 24} Defense counsel requested and received a continuance of the original sentencing hearing date so that counsel could file a sentencing memorandum that provided information regarding mitigation. Defense counsel filed a sentencing

memorandum on October 24, 2017, emphasizing that Ray was the subject of a "prolonged attack before he opened fire." Moreover, defense counsel argued at sentencing that Huffman lured Ray to his home and provoked the shooting; counsel asked for minimum, concurrent sentences. Ray declined to speak on his own behalf.

{¶ 25} On this record, Ray has not demonstrated that his defense counsel acted deficiently with respect to Ray's decision to enter a plea, as opposed to going to trial and claiming self-defense, or as to Ray's presentation of mitigating information. Although Ray claims that he would not have entered his plea had defense counsel not told him that he would receive four years in prison, the record further shows that the trial court informed Ray that it would decide his sentence at sentencing, and Ray expressed his understanding. Ray has not demonstrated that his defense counsel provided ineffective assistant, resulting in a manifest injustice that warrants the vacation of his plea.

{¶ 26} Finally, we have held "that matters outside the record that allegedly corrupted the defendant's choice to enter a guilty or no contest plea so as to render that plea less than knowing and voluntary, such as ineffective assistance provided by a defendant's trial counsel, are proper grounds for post-conviction relief pursuant to R.C. 2953.21 and that the availability of that relief removes defendant's claims from the type of extraordinary circumstances that demonstrate a manifest injustice, which is required for Crim.R. 32.1 relief." *Nawman*, 2d Dist. Clark No. 2016-CA-43, 2017-Ohio-7344, ¶ 15, citing *State v. Hartzell*, 2d Dist. Montgomery No. 17499, 1999 WL 957746, *2 (May 10, 2002) and *State v. Moore*, 2d Dist. Montgomery No. 24378, 2011-Ohio-4546, ¶ 13-15; *see also State v. Preston*, 2d Dist. Montgomery No. 28451, 2020-Ohio-1042, ¶ 14; *State v. Dixon*, 2d Dist. Clark No. 2017-CA-80, 2019-Ohio-1385, ¶ 10.

**{¶ 27}** Ray's assignment of error is overruled.

### III. Conclusion

**{¶ 28}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Samuel Adam Usmani
George A. Katchmer
Hon. Nick A. Selvaggio