[Cite as *State v. Woodfork*, 2024-Ohio-2555.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29967 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 1669 |
| | : | |
| RICHARD E. WOODFORK JR. | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on July 3, 2024

. . . . . . . . . . .

DAVID R. MILES, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Richard E. Woodfork, Jr. appeals from the judgment of the Montgomery County Court of Common Pleas overruling his post-sentence motion to withdraw his guilty plea. Woodfork also appeals from the court's judgment finding him guilty of violating his community control sanctions, revoking his community control

sanctions, and imposing a 30-month prison term. For the reasons outlined below, the judgments of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 13, 2022, a Montgomery County grand jury returned an indictment charging Woodfork with one fifth-degree-felony count of possession of drugs (cocaine) and one second-degree-felony count of aggravated possession of drugs (methamphetamine). Woodfork pled not guilty to the indicted charges at his arraignment, but he later negotiated a plea agreement with the State whereby he agreed to plead guilty to a reduced third-degree-felony charge of aggravated possession of drugs. In exchange for Woodfork's plea, the State agreed to dismiss the possession of cocaine charge and to jointly recommend the imposition of community control sanctions at sentencing.

{¶ 3} On August 30, 2023, the trial court accepted Woodfork's negotiated guilty plea after engaging him in a plea colloquy. The trial court then held a sentencing hearing on September 27, 2023, and sentenced Woodfork to a five-year term of community control sanctions. The community control sanctions included several requirements, including that Woodfork comply with the General Conditions of Supervision and attend and complete inpatient drug treatment at the STAR Program ("STAR").

{¶ 4} A week after being sentenced, Woodfork, who was represented by counsel, filed a pro se motion requesting that trial court modify his community control sanctions. Specifically, Woodfork wanted the sanction requiring him to complete inpatient drug

treatment to be changed to outpatient drug treatment so that he could continue operating his auto-detailing company. Woodfork also filed a pro se motion to withdraw his guilty plea on grounds that his trial counsel had provided ineffective assistance. In support of that motion, Woodfork claimed his trial counsel had promised that his guilty plea would not result in his being sentenced to jail or any other correctional institution. The trial court did not rule on either of Woodfork's pro se motions.

{¶ 5} Shortly after Woodfork filed his pro se motions, his trial counsel moved to withdraw from the case. The trial court granted counsel's motion to withdraw and appointed new counsel for Woodfork. Woodfork's new trial counsel thereafter filed a motion to withdraw his guilty plea that raised the same ineffective-assistance claim argued in Woodfork's pro se motion. The motion also alleged that Woodfork's guilty plea was not knowingly, intelligently, and voluntarily entered due to his being under the influence of illicit substances during the plea hearing.

{¶ 6} Around the same time, on October 16, 2023, Woodfork's probation officer filed a notice of violation/revocation hearing. The notice alleged that Woodfork had violated Sanction #4 of his community control sanctions, which required him to attend and complete inpatient drug treatment at STAR. The notice also alleged that Woodfork had violated Rule #6 of the General Conditions of Supervision, which prohibited Woodfork from using or possessing any controlled substances, drugs of abuse, or drug substitutes.

{¶ 7} On November 8, 2023, the trial court held a hearing at which it addressed the motion to withdraw the guilty plea that was filed by Woodfork's counsel. After considering the parties' arguments on the plea-withdrawal issue, the trial court declined

to hold an evidentiary hearing on the matter. The trial court did, however, permit Woodfork to make a statement on the record. During his statement, Woodfork claimed that he had been intoxicated during the plea hearing because he had used marijuana and Adderall earlier on the day of his plea. Woodfork also claimed that his prior trial counsel had advised him to accept the State's plea offer and enter a guilty plea but had failed to tell him that, by doing so, he could be sent to jail or be required to complete inpatient drug treatment at a correctional facility.

{¶ 8} The trial court found that Woodfork's arguments lacked merit and overruled his motion to withdraw his guilty plea. Immediately after that ruling, the State offered to forego the revocation proceedings for the alleged community control violations if Woodfork would agree to enter inpatient treatment at STAR. Woodfork, however, declined the offer. The State thereafter called Woodfork's probation officer to testify regarding Woodfork's alleged community control violations.

{¶ 9} The probation officer's testimony established that Woodfork signed his General Conditions of Supervision on September 27, 2023. The probation officer thereafter met with Woodfork on October 2, 2023, and went over each sanction listed on the termination entry with him. The probation officer confirmed that Sanction #4 on the termination entry included the requirement that Woodfork "attend[ ] and complete[ ] the STAR Program (Probation Officer will arrange bed date), and any additional programming recommended by an aftercare treatment agency, Montgomery County Probation Services, or the Court[.]" State's Ex. 2; Hearing Tr. (Nov. 8, 2023), p. 21.

{¶ 10} According to the probation officer, during the October 2 meeting, Woodfork

told her that he had never agreed to Sanction #4 and that he did not want to do inpatient drug treatment at STAR.   In response, the probation officer told Woodfork that he could either comply with Sanction #4 or face revocation of his community control sanctions. The probation officer testified that Woodfork initially chose not to go forward with revocation proceedings, but later changed his mind when he reported back to her on October 10, 2023.

{¶ 11} When the probation officer met with Woodfork on October 10, Woodfork advised her that he was not going to complete inpatient drug treatment at STAR and wanted to go forward with revocation proceedings.  In response, the probation officer told Woodfork that she would be filing for revocation of his community control sanctions. The probation officer testified that she prepared a notice of violation/revocation hearing and sent it in for filing on October 13, 2023.   However, the probation officer recognized that the notice was not officially filed until October 16, 2023.

{¶ 12} The probation officer testified that Woodfork reported back to her on October 13, 2023, and was taken into custody for refusing to complete inpatient drug treatment at STAR. The probation officer also testified that a bed at STAR had become available for Woodfork the following week, and that STAR attempted to admit Woodfork into the program, but Woodfork refused to go.

{¶ 13} With regard to Woodfork's drug use, the probation officer testified that she first requested a drug screen from Woodfork on October 10, 2023.   On cross-examination, the probation officer confirmed that Woodfork had told her that the drug screen would come back positive because he had marijuana and Adderall in his system.

Although not directly stated on the record, it was intimated that Woodfork had claimed that he used those drugs prior to being placed on community control.

{¶ 14} After hearing the probation officer's testimony, the trial court found that Woodfork was guilty of violating the terms of his community control sanctions. The trial court then immediately proceeded to sentence Woodfork. During sentencing, the trial court found that Woodfork was not amenable to community control and imposed a 30-month prison sentence for his community control violation.

{¶ 15} Woodfork now appeals from the trial court's judgments overruling his post-sentence motion to withdraw his guilty plea, revoking his community control sanctions, and sentencing him to prison. In doing so, Woodfork has raised three assignments of error for review.


**First Assignment of Error**

{¶ 16} Under his first assignment of error, Woodfork contends the trial court erred by overruling his post-sentence motion to withdraw his guilty plea. In support of this claim, Woodfork raises the same arguments that he raised in his motion, i.e., that his guilty plea was invalid due to his being under the influence of marijuana and Adderall at the time of his plea hearing and due to his trial counsel's ineffective assistance.

{¶ 17} Under Crim.R. 32.1: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Pursuant to this rule, "a trial court may permit a defendant to withdraw

a plea after imposition of sentence only to correct a manifest injustice." (Citations omitted.) *State v. Ray*, 2d Dist. Champaign No. 2019-CA-31, 2020-Ohio-4769, ¶ 11. The burden to prove the existence of a manifest injustice rests upon the defendant and demands a showing of extraordinary circumstances. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977); *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708, ¶ 20 (2d Dist.).

{¶ 18} A defendant may establish a manifest injustice " 'by showing that he did not enter the guilty plea in a knowing, intelligent, or voluntary manner.' " *State v. Leifheit*, 2d Dist. Clark No. 2019-CA-78, 2020-Ohio-5106, ¶ 16, quoting *State v. Riley*, 4th Dist. Washington No. 16CA29, 2017-Ohio-5819, ¶ 18. (Other citations omitted.) " 'Ineffective assistance of counsel can [also] constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea.' " *State v. Banks*, 2d Dist. Montgomery No. 25188, 2013-Ohio-2116, ¶ 9, quoting *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 18 (10th Dist.). " 'When arguing the ineffective assistance of counsel in a motion to withdraw a plea, the defendant must show that counsel's ineffectiveness affected whether the defendant made a knowing and voluntary plea.' " *Id.*, quoting *State v. Doak*, 7th Dist. Columbiana Nos. 03 CO 15 and 03 CO 31, 2004-Ohio-1548, ¶ 3.

{¶ 19} The decision whether to grant a post-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. *Smith* at 264; *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). Accordingly, we review a trial court's ruling on a post-sentence motion to withdraw a guilty plea for abuse of discretion. *State v. Rozell*, 2018-Ohio-1722, 111 N.E.3d 861, ¶ 25 (2d Dist.), citing *Smith* at paragraph two of the

syllabus. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. However, "[a]n abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. Pate*, 2021-Ohio-1838, 173 N.E.3d 567, ¶ 36 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 20}** In this case, Woodfork claims the trial court abused its discretion by failing to grant his post-sentence motion to withdraw his guilty plea on grounds that he was under the influence of marijuana and Adderall at the time of his plea hearing. According to Woodfork, this alleged drug use prevented him from knowingly, intelligently, and voluntarily entering his guilty plea.

**{¶ 21}** When considering the merits of Woodfork's drug-use claim, the trial court was permitted to weigh the claim against the statements Woodfork made when he entered his guilty plea. *State v. Summers*, 2d Dist. Greene No. 2006-CA-66, 2007-Ohio-3168, ¶ 20. It is well established that "[a] trial court may determine that a defendant understands his plea 'by considering the surrounding circumstances such as the dialogue between the court and the defendant and the defendant's demeanor.' " *State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 18, quoting *State v. McDowell*, 8th Dist. Cuyahoga No. 70799, 1997 WL 15254, *2 (Jan. 16, 1997). (Other citations omitted.)

**{¶ 22}** "Where the record 'directly refutes [an appellant's] claim that he was so

heavily drugged that he was unable to enter a knowing, intelligent, and voluntary plea,' we have overruled the appellant's assignment of error based on that allegation." *State v. Ashley*, 2d Dist. Montgomery No. 28377, 2019-Ohio-5007, ¶ 15, citing *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 8-14. For example, in *Summers*, we affirmed the trial court's judgment overruling a defendant's motion to withdraw a guilty plea where the defendant's statements during the plea hearing "belie[d] his subsequent claim that his ability to understand the proceedings and enter a knowing, voluntary plea was affected by drugs he was taking[.]" *Summers* at ¶ 20. *See also Ashley* ¶ 17 ("[o]ur review of the plea hearing transcript reveal[ed] nothing that arguably could be indicative that [defendant] was experiencing cognitive difficulties").

{¶ 23} Here, the record of the plea hearing establishes that Woodfork responded appropriately to all of the trial court's questions and confirmed that he understood all of the information provided by the trial court at the plea hearing. When the trial court asked Woodfork whether he was "under the influence of any alcohol, drugs, or medication that could affect [his] ability to understand what [they were] doing [at the plea hearing]," Woodfork answered: "No, sir." Plea Hearing Tr. (Aug. 30, 2023), p. 10. When the trial court asked Woodfork whether he understood everything that had happened at the plea hearing, Woodfork answered: "[Y]es, sir." *Id.* at 14. Also, while ruling on Woodfork's post-sentence motion to withdraw his guilty plea, the trial court confirmed that, during the plea hearing, it had found that Woodfork was not influenced by any drugs, alcohol, or medications that day.

{¶ 24} When considering Woodfork's appropriate responses at the plea hearing

and the fact that the trial court personally observed Woodfork's demeanor at the hearing and found no reason to believe that he was under the influence of drugs, we find that it was reasonable and not an abuse of discretion for the trial court to reject Woodfork's claim that his alleged marijuana and Adderall use had prevented him from entering a knowing, intelligent, and voluntary guilty plea. Such a claim was refuted by the record, and the trial court was not required to give it any credit. *See Summers,* 2d Dist. Greene No. 2006-CA-66, 2007-Ohio-3168, at ¶ 20.

**{¶ 25}** Woodfork also contends the trial court abused its discretion by failing to grant his post-sentence motion to withdraw his guilty plea on ineffective assistance grounds. Woodfork claims his trial counsel provided ineffective assistance at the plea hearing because counsel allegedly told him that his guilty plea would not result in his being sentenced to jail or an inpatient drug treatment facility. Woodfork claims this misinformation prevented him from entering a knowing, intelligent, and voluntary guilty plea.

**{¶ 26}** In evaluating whether an ineffective assistance claim constitutes a manifest injustice that warrants withdrawing a plea, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Under that test, the defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.

**{¶ 27}** To establish deficient performance, a defendant must show that his trial

counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 28} It is appropriate for a trial court to overrule a defendant's motion to withdraw a guilty plea alleging ineffective assistance of counsel when the ineffective assistance claim is only supported by the defendant's own self-serving affidavit or statement. *Banks*, 2d Dist. Montgomery No. 25188, 2013-Ohio-2116, at ¶ 10, citing *State v. Laster*, 2d Dist. Montgomery No. 19387, 2003-Ohio-1564, ¶ 8 ("where nothing in the record supports a defendant's claim that his plea was not knowingly and voluntarily made other than his own self-serving affidavit or statement, the record is insufficient to overcome the presumption that the plea was voluntary").

{¶ 29} In this case, other than Woodfork's own self-serving statements, there is nothing in the record supporting Woodfork's claim that his trial counsel provided misinformation about his potential sentence. Because Woodfork's ineffective assistance claim relies on self-serving statements that are unsupported by the record, the trial court did not abuse its discretion by rejecting the claim.

{¶ 30} Even if there had been something in the record supporting Woodfork's ineffective assistance claim, Woodfork cannot establish any resulting prejudice. This is

because the record establishes that the trial court discussed the potential sentence with Woodfork at the plea hearing and specifically advised Woodfork that he could receive community control sanctions "for a period of up to five years, *which may include some community residential sanctions, including up to six months of incarceration or a facility or other non-residential sanctions.*" (Emphasis added.) Plea Hearing Tr. (Aug. 30, 2023), p. 11. The trial court's comments at the plea hearing, comments which Woodfork indicated he understood, correctly apprised Woodfork of the possibility that he would be subject to a residential sanction and thus negated any alleged misinformation provided by his trial counsel on that matter. Therefore, Woodfork cannot establish any prejudice resulting from the alleged misinformation provided by his trial counsel. Accordingly, his ineffective assistance claim fails for that reason as well.

{¶ 31} For all the foregoing reasons, we find that Woodfork failed to establish a manifest injustice warranting the withdrawal of his guilty plea as required by Crim.R. 32.1. Accordingly, the trial court did not abuse its discretion by overruling Woodfork's post-sentence motion to withdraw his guilty plea.

{¶ 32} Under this assignment of error, Woodfork raises an additional ineffective assistance claim that has no bearing on whether a manifest injustice occurred during his guilty plea. Specifically, Woodfork argues that the trial counsel who filed the plea withdrawal motion on his behalf was ineffective for failing to call his prior counsel as a witness to testify regarding the alleged misinformation provided during his plea negotiations. This argument should have been raised in a separate assignment of error. Regardless, it lacks merit for at least two reasons.

**{¶ 33}** First, Woodfork cannot establish deficient performance on the part of his counsel because no formal evidentiary hearing at which prior counsel could have been called to testify ever took place. After the trial court considered the parties' arguments on Woodfork's motion to withdraw his guilty plea, the trial court found that Woodfork was not entitled to an evidentiary hearing and instead allowed Woodfork to make statement in support of his motion. *See* Hearing Tr. (Nov. 8, 2023), p. 7. *See also State v. Johnson*, 2d Dist. Champaign No. 2018-CA-27, 2019-Ohio-1259, ¶ 15 ( "a court is not required to hold an evidentiary hearing on a Crim.R. 32.1 motion so that evidence outside the record can be presented when the motion and record do not present a reasonable likelihood of a manifest injustice").

**{¶ 34}** Even if there had been an evidentiary hearing at which Woodfork's prior counsel could have been called to testify, the decision whether to present that testimony was a matter of trial strategy that could not form the basis of an ineffective assistance claim. It is well established that "[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992). "[C]ounsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." (Citation omitted.) *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). More specifically, "[a] failure to call a witness is not ineffective assistance of counsel if calling that witness opens the door to unfavorable testimony that counsel might reasonably conclude would likely

outweigh the value of any favorable testimony the witness might offer." *State v. Reynolds*, 148 Ohio App.3d 578, 2002-Ohio-3811, 774 N.E.2d 347, ¶ 74 (2d Dist.), citing *State v. Griffitts*, 2d Dist. Montgomery No. 18755, 2002 WL 252786, *7 (Feb. 22, 2002). *Accord State v. Matthews*, 10th Dist. Franklin No. 03AP-140, 2003-Ohio-6307, ¶ 31.

**{¶ 35}** In this case, it is possible that Woodfork's trial counsel would have chosen not to have prior counsel testify out of concern that prior counsel would say he properly informed Woodfork about his potential sentence at the plea hearing. Accordingly, Woodfork's additional ineffective assistance claim lacks merit.

**{¶ 36}** Because Woodfork's additional ineffective assistance claim lacks merit, and because the trial court did not abuse its discretion by overruling Woodfork's post-sentence motion to withdraw guilty plea, Woodfork's first assignment of error is overruled.

**Second Assignment of Error**

**{¶ 37}** Under his second assignment of error, Woodfork contends the trial court abused its discretion by failing to rule on his pro se motion to modify his community control sanctions. There is no dispute that the trial court did not rule on the pro se motion in question. However, the record establishes that Woodfork was represented by counsel when he filed the motion.

**{¶ 38}** "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus.

"Because a defendant represented by counsel has no right to simultaneously assert the right to proceed pro se, a trial court may not entertain a represented defendant's pro se motions." (Citations omitted.) *In re Disqualification of Allen*, 172 Ohio St.3d 1217, 2023-Ohio-3238, 223 N.E.3d 1284, ¶ 31. Therefore, "[w]hen a criminal defendant is represented by counsel and counsel does not join in the defendant's pro se motion or otherwise indicate a need for the relief sought by the defendant pro se, the trial court cannot properly consider the defendant's pro se motion." *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 32 (1st Dist.), citing *State v. Davis*, 10th Dist. Franklin No. 05AP-193, 2006-Ohio-5039, ¶ 12. and *State v. Pizzaro*, 8th Dist. Cuyahoga No. 94849, 2011-Ohio-611, ¶ 7.

{¶ 39} As previously discussed, Woodfork was represented by counsel when he filed his pro se motion to modify his community control sanctions. Because Woodfork's counsel did not join in the motion, the trial court did not err by disregarding it.

{¶ 40} Woodfork's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 41} Under his third assignment of error, Woodfork contends the trial court erred by finding him guilty of violating his community control sanctions, revoking his community control sanctions, and imposing a 30-month prison term. We disagree.

*Revocation of Community Control Sanctions*

{¶ 42} "The right to continue on community control depends upon compliance with

the conditions of community control and is a matter within the sound discretion of the trial court." (Citation omitted.) *State v. Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392, ¶ 13. "Accordingly, we review the trial court's revocation of community control for an abuse of discretion." (Citation omitted.) *Id.* As previously discussed, "[a]n abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *Pate*, 2021-Ohio-1838, 173 N.E.3d 567, at ¶ 36, citing *AAAA Ents., Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 43} "Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt." *State v. Reed*, 2d Dist. Montgomery No. 29523, 2023-Ohio-1161, ¶ 11, citing *State v. Cofer*, 2d Dist. Montgomery No. 22798, 2009-Ohio-890, ¶ 12. (Other citation omitted.) " 'The State need only present substantial evidence of a violation of the terms of a defendant's community control.' " *Id.*, quoting *Cofer* at ¶ 12. "Substantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat less than a preponderance." (Citations omitted.) *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 18 (6th Dist.). *Accord State v. Fountain*, 2023-Ohio-3111, 224 N.E.3d 97, ¶ 15 (3d Dist.); *State v. Backus*, 5th Dist. Fairfield No. 2022 CA 0041, 2023-Ohio-3222, ¶ 33. "Similar to a bench trial, when reaching its decision following an evidentiary hearing, the trial court, as the finder of fact, [is] free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented." *State v. McGail*, 2021-Ohio-231, 167 N.E.3d 70, ¶ 92 (2d Dist.), citing *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28.

{¶ 44} In this case, Woodfork claims the trial court abused its discretion by finding that he had violated Sanction #4 of his community control sanctions, i.e., the sanction that required him to complete inpatient drug treatment at STAR.   Woodfork claims that there was no such violation because STAR did not have a bed available for him and was not ready to admit him into the program until after his probation officer had filed the notice of violation/revocation hearing.   Woodfork also claims that the notice incorrectly alleged that he had violated Rule #6 of the General Conditions of Supervision, which prohibited him from using or possessing any controlled substances, drugs of abuse, or drug substitutes.   Specifically, Woodfork claims that his first drug screen came back positive because of drugs he had ingested prior to being sentenced.

{¶ 45} Based on the testimony presented at the revocation hearing, we find that the trial court could have reasonably determined that Woodfork had violated his community control by failing to attend and complete inpatient drug treatment at STAR.   It is clear from the record that Woodfork had no desire to participate in STAR.   The record established that on October 10, 2023, Woodfork specifically told his probation officer that he would rather move forward with revocation proceedings than go to STAR.   In light of that statement, Woodfork's probation officer told Woodfork that she was going to file a notice of violation/revocation hearing, which was filed on October 16, 2023.   Shortly thereafter, a bed at STAR became available for Woodfork and STAR attempted to admit him into the program, but Woodfork refused admission.

{¶ 46} Although the notice of violation/revocation hearing was filed before Woodfork could be admitted into to STAR, we find it significant that Woodfork told his

probation officer that he was not going to participate in STAR and thereafter refused admission into the program when a bed became available. In our view, that conduct constituted substantial evidence of Woodfork failing to fulfill the STAR requirement of his community control sanctions. This finding was also supported by the fact that Woodfork declined the State's pre-hearing offer to forego the revocation proceedings if he agreed to enter STAR. Because there was substantial evidence of Woodfork's violating the STAR requirement of his community control sanctions, it is immaterial whether Woodfork's positive drug screen also constituted a violation.

{¶ 47} For the foregoing reasons, the trial court did not abuse its discretion by finding that Woodfork had violated the terms of his community control sanctions and by revoking his community control on that basis.

*Prison Sentence*

{¶ 48} Woodfork also challenges the prison sentence he received for violating his community control sanctions. We note that "[w]hen a defendant violates the conditions of his community control, 'R.C. 2929.15(B) provides the trial court [with] a great deal of latitude in sentencing the offender.' " *State v. Hampton*, 2d Dist. Montgomery No. 29612, 2023-Ohio-1591, ¶ 17, quoting *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 20. "A trial court has the option of imposing 'a longer period of community control, a more restrictive community-control sanction, or a prison term of any length within the range of that available for the original offense, up to the maximum that the trial court specified at the first sentencing hearing.' " *Id.*, quoting *Brooks* at ¶ 20,

citing R.C. 2929.15(B).

**{¶ 49}** Appellate review of prison sentences imposed for violations of felony community control sanctions is governed by the standard set forth in R.C. 2953.08(G)(2). *State v. Gibson*, 2d Dist. Champaign No. 2016-CA-12, 2017-Ohio-691, ¶ 14, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. Pursuant to R.C. 2953.08(G)(2), this court may vacate or modify Woodfork's sentence only if we "determine[ ] by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1. In this case, none of the relevant statutes mentioned in R.C. 2953.08(G)(2) apply to this case; accordingly, we must simply determine whether Woodfork's sentence is otherwise contrary to law.

**{¶ 50}** " '[O]therwise contrary to law' means "in violation of statute or legal regulations at a given time." ' " *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). This court has also defined "contrary to law" as " 'a sentencing decision [that] manifestly ignores an issue or factor which a statute requires a court to consider.' " *State v. Morgan*, 2d Dist. Miami No. 2023-CA-10, 2023-Ohio-3913, ¶ 7, quoting *State v. Lofton*, 2d Dist. Montgomery No. 19852, 2004-Ohio-169, ¶ 11. "For example, '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.' " *Id.*, quoting *State v. Brown*, 2017-Ohio-8416, 99

N.E.3d 1135, ¶ 74 (2d Dist.). (Other citation omitted.) "For all revocations, the prison term must be within the range of prison terms available for the offense for which community control had been imposed and the term may not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing." *State v. Monroe*, 2d Dist. Clark No. 2018-CA-124, 2020-Ohio-597, ¶ 41, citing R.C. 2929.15(B)(3).

**{¶ 51}** In this case, Woodfork's 30-month prison sentence is within the statutory range of prison terms available for the third-degree-felony aggravated possession offense for which his community control was imposed. *See* R.C. 2929.14(A)(3)(b). Also, Woodfork's 30-month prison sentence does not exceed the prison term specified in the notice given by the trial court at the original sentencing hearing. At the original sentencing hearing, the trial court notified Woodfork that if he "violate[s] any terms or conditions of [his] community control sanctions, * * * the Court can impose * * * a prison term of 36 months as an alternate sentence." Sentencing Tr. (Sept. 27, 2023), p. 18.

**{¶ 52}** In addition, the record establishes that, when imposing the 30-month prison sentence, the trial court considered the principles and purposes of felony sentencing in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *See* Sentencing Tr. (Nov. 8, 2023), p. 32; Sentencing Entry (Nov. 9, 2023). We note that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 42. "[W]hen reviewing felony sentences that are

imposed solely after considering the factors in R.C. 2929.11 and 2929.12, this court does not analyze whether those sentences are unsupported by the record, but only whether they are contrary to law." *State v. McCoy*, 2d Dist. Champaign No. 2023-CA-11, 2024-Ohio-98, ¶ 27, citing *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18.

{¶ 53} Here, Woodfork's sentence is not contrary to law because it is within the authorized statutory range, does not exceed the notice given at the original sentencing hearing, and because the trial court considered the principles and purposes of felony sentencing in R.C. 2929.11 and the sentencing factors in R.C. 2929.12.

{¶ 54} Woodfork nevertheless argues that a prison sentence was unwarranted in this case because his community control violation, i.e. his failure to complete inpatient drug treatment at STAR, was a "technical violation." This argument lacks merit because the distinction between a technical and nontechnical community control violation becomes relevant only when a trial court is sentencing an offender to prison for a violation of community control that was imposed for a fifth-degree felony or a fourth-degree felony that is not an offense of violence or a sexually oriented offense. *See* R.C. 2929.15(B)(1)(c)(i)-(ii) (stating that certain sentencing caps apply to technical violations of community control sanctions imposed for fifth-degree felonies and fourth-degree felonies that are not offenses of violence or sexually oriented offenses). *See also* R.C. 2929.15(E) (defining "technical violation" as "a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense").

**{¶ 55}** In this case, the trial court sentenced Woodfork for a violation of community control that was imposed for a third-degree felony; therefore, the technical/nontechnical distinction is immaterial to Woodfork's sentence. Also, multiple courts, including the Supreme Court of Ohio, have found that an offender's failure to complete an inpatient drug treatment program does not constitute a technical violation of the offender's community control. *See, e.g., State v. Castner*, 163 Ohio St.3d 19, 2020-Ohio-4950, 167 N.E.3d 939, ¶ 16; *State v. Hogya*, 2024-Ohio-639, __ N.E.3d __, ¶ 14-17 (11th Dist.); *State v. Elliot*, 1st Dist. Hamilton No. C-220339, 2023-Ohio-1459, ¶ 15-16; *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, ¶ 15.

**{¶ 56}** Because the trial court did not abuse its discretion by finding that Woodfork violated his community control sanctions, and because the 30-month prison sentence imposed for the violation is not clearly and convincingly contrary to law, Woodfork's third assignment of error is overruled.

## Conclusion

**{¶ 57}** Having overruled all three assignments of error raised by Woodfork, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.